RYAN ALEXANDER
Nevada Bar No. 10845
RICHARD ENGLEMANN
Nevada Bar No. 6965
RYAN ALEXANDER, CHTD.
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102
Phone: (702) 868-3311
Fax: (702) 822-1133
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHANNON McMILLEN, an Individual and On Behalf of Others Similarly Situated;<br><br>Plaintiff,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARMENT, a Political Subdivision of the State of Nevada; CHARLES SMITH, an Individual; CITY OF BULLHEAD CITY, a Municipal Corporation in the State of Arizona; BOULDER CITY POLICE DEPARMENT, a Political Subdivision of the State of Arizona; EDDIE ESPINOZA, an Individual; and DOES I-X, Unknown Persons or Entities;<br>Defendants. | Case No.: 2:24-cv-415<br><br>**COMPLAINT**<br><br>**CLAIMS FOR RELIEF:**<br><br>**(1) Violation of Civil Rights Under 42 U.S.C. §1983**<br>**(2) Violation of Civil Rights Under 42 U.S.C. §1983 – Monell Liability**<br>**(3) Negligence**<br>**(4) Intentional Infliction of Emotional Distress**<br>**(5) False Imprisonment** |

COMES NOW Plaintiff SHANNON McMILLEN ("MCMILLEN," "Plaintiff"), by and through her attorney of record, Ryan Alexander, Esq. of RYAN ALEXANDER, CHTD., as an individual and on behalf of others similarly situated, for their complaint against Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD"), a Political Subdivision of the State of Nevada; CHARLES SMITH, an Individual; EDDIE ESPINOZA, an Individual; CITY OF BULLHEAD CITY ("BULLHEAD CITY"), a Municipal Corporation the State of Arizona, BULLHEAD CITY POLICE DEPARTMENT, a Political Subdivision of the State of Arizona, and DOES I through X, inclusive (collectively, "Defendants"), and hereby complains, alleges and states as follows:

**PARTIES**

1. Plaintiff SHANNON McMILLEN is an individual residing in Clark County, Nevada.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

2.  Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD"), a Political Subdivision of the State of Nevada, is located in Clark County, Nevada.

3.  Defendant CHARLES SMITH is an individual in Clark County, Nevada, and was at all relevant times an officer of LAS VEGAS METROPOLITAN POLICE DEPARTMENT.

4.  Defendant BULLHEAD CITY is a Municipal Corporation in the State of Arizona, located in Mohave County, Arizona.

5.  Defendant EDDIE ESPINOZA is an individual in Mohave County, Arizona, and was at all relevant times an officer of BULLHEAD CITY POLICE DEPARTMENT.

6.  Defendant BULLHEAD CITY POLICE DEPARTMENT ("BCPD") is a Political Subdivision of the State of Arizona, located in Mojave County, Arizona.

7.  The true names and capacities, whether individual, corporate, associate or otherwise of other Defendant hereinafter designated as DOES I-X, inclusive, who are in some manner responsible for injuries described herein, are unknown at this time. Plaintiff, therefore, sues said Defendant by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when ascertained.

8.  The Defendants are jointly and severally liable for each Defendant's actions.

## VENUE AND JURISDICTION

9.  Jurisdiction is proper in the District of Nevada as Plaintiff is bringing this action pursuant to 42 U.S.C. §1983.

10.  Supplemental jurisdiction over state law claims is proper pursuant to 28 U.S.C. §1367(a).

11.  Venue is proper under 28 U.S.C. §1391(c) as the incident for which Plaintiff complains and for which Defendants are liable arises out of actions of LVMPD and BULLHEAD CITY in Clark County, Nevada, Mohave County, Arizona.

## GENERAL ALLEGATIONS

12.  At all relevant times, McMILLEN was a Nevada resident.

13.  On or about the early afternoon of March 9, 2022, McMILLEN was driving her vehicle in the

City of Laughlin, in Clark County, Nevada.

14.   LVMPD officer CHARLES SMITH, Badge P#13800 ("SMITH") was on duty for LVMPD in the City of Laughlin.

15.   LVMPD Officer SMITH stopped McMILLEN within the City of Laughlin and effectuated a stop for suspected driving under the influence.

16.   LVMPD Officer SMITH took McMILLEN into custody and placed her in an LVMPD patrol car.

17.   McMILLEN was detained in Nevada.

18.   McMILLEN refused to voluntarily offer a blood draw to LVMPD.

19.   **SMITH and other DOE LVMPD Officers (collectively "LVMPD Officers") then renditioned McMILLEN out of the State of Nevada and into the State of Arizona.**

20.   McMILLEN was not a probable cause suspect of any crime in Arizona.

21.   McMILLEN did not flee to Arizona under her own volition, but was taken there in custody by LVMPD.

22.   In renditioning McMILLEN from her citizen state of Nevada to Arizona for search and seizure of her blood, LVMPD did not follow any applicable interstate compacts for extradition of a criminal suspect.

23.   LVMPD Officers transported McMILLEN to Western Arizona Regional Medical Center ("WARMC") in BULLHEAD CITY, Mojave County, Arizona.

24.   LVMPD Officers contacted BULLHEAD CITY for BCPD officers to contact an Arizona judge for issuance of a nonconsensual blood draw warrant.

25.   Upon information and belief, BCPD officers, including Defendant EDDIE ESPINOZA, Badge #316, called judicial chambers in several Arizona counties trying to get a judge to issue nonconsensual blood draw warrant against McMILLEN.

26.   BCPD Officer EDDIE ESPINOZA submitted a nonconsensual blood draw warrant request affidavit to Maricopa County, Arizona.

27.   Honorable David Seyer, a Maricopa County Superior Court Judge, responded to a request by BULLHEAD CITY and BCPD, and issued a nonconsensual blood draw warrant to take blood from McMILLEN. *See* Search Warrant, Ex. 1.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

28.    The nonconsensual blood draw warrant issued in Maricopa County lists the suspected driving activity as being at the location of "East Laughlin Civic Drive X South Casino Drive in the County of Clark, State of Nevada." *Id*.

29.    When Maricopa County issued the nonconsensual blood draw warrant to be executed in Mojave County, McMILLEN was a Nevada resident who was detained under probable cause of driving under the influence on Nevada roads, not Arizona.

30.    McMILLEN did not purposefully avail herself of Arizona jurisdiction, laws or courts.

31.    At the time that Judge Seyer of Maricopa County, Arizona, issued the nonconsensual blood draw warrant, he did not have lawful jurisdiction over Nevadan McMILLEN, who was renditioned from Nevada to Mojave County, Arizona without her consent by LVMPD.

32.    LVMPD, BCPD and BULLHEAD CITY knew, or should have known, that Judge Seyer did not have lawful jurisdiction over McMILLEN yet proceeded to request a nonconsensual blood draw warrant.

33.    WARMC staff drew McMILLEN's blood against her will.

34.    Thereafter, LVMPD Officers proceeded to extradite McMILLEN back to Nevada without a court hearing or by following any established legal procedures for extraditing a Nevada criminal defendant [whether under mere probable cause, or under indictment or complaint] from Arizona.

35.    LVMPD, BCPD and BULLHEAD CITY are parties to a private contract named "Interlocal Agreement for Mutual Aid in Law Enforcement" ("Interlocal Agreement"). *See* Exhibit 2.

36.    While it may purport to deputize LVMPD officers within BULLHEAD CITY limits, and BULLHEAD CITY police officers to perform certain functions in Clark County, nothing in the Interlocal Agreement gives BULLHEAD CITY judges or Maricopa County judges jurisdiction to issue search warrants or nonconsensual blood draw warrants against Nevada residents acting solely in Nevada.

37.    BULLHEAD CITY Municipal Courts and Maricopa County Superior Courts do not have jurisdiction over criminal suspects residing in Nevada, or over Nevada residents suspected of Nevada crimes.

38.    LVMPD illegally used BULLHEAD CITY police and Maricopa County judicial officers to use

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

Arizona law seize McMILLEN's blood, when McMILLEN was operating her vehicle only within the legal boundaries of Nevada.

39.   LVMPD illegally physically removed McMILLEN from her resident state to another jurisdiction in order to use BCPD, BULLHEAD CITY and Maricopa County Superior Court Judge to seize her blood.

40.   LVMPD, BCPD and BULLHEAD CITY engaged in a conspiracy to unlawfully remove McMILLEN from the state of Nevada and draw McMILLEN's blood against her will.

41.   LVMPD has a closely-guarded "Laughlin Manual" that in pertinent part instructs LVMPD officers to violate the constitutional rights of Nevada residents suspected of DUI by renditioning them to Arizona for "non-consensual" blood draws. *See* Excerpt, Exhibit 3.

42.   Upon information and belief, based on the testimony elicited at McMILLEN's criminal trial, LVMPD has carried out countless such violations of Nevada citizens' constitutional rights as an institutionalized pattern and practice of renditioning them out of Nevada to Arizona.

43.   The Clark County District Attorney used the aforementioned seized blood to prosecute McMILLEN in Laughlin Township Justice Court, Case No. 202213317C.

44.   As a result of Defendants' tortious actions, McMILLEN suffered physical and emotional injuries, pain, suffering and emotional distress, loss of employment and other economic losses to her damage in excess of $75,000.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

45.  Plaintiff brings this action on behalf of others similarly situated as a class action pursuant to Fed. R. Civ. P. 23.

46.  Plaintiff will fairly and adequately represent and will protect the interests of the class and retained counsel with experience litigating civil rights claims.

47.  The proposed class includes all persons renditioned from Nevada to Arizona by LVMPD for purposes of search and seizure under Arizona law – including blood draws like McMILLEN - and the likely class members are so numerous that joinder of all members is impracticable.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

48. A collective and class action suit, such as this, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of product defect litigation, making it virtually impossible for members of the Renditioned Class to individually redress the wrongs done to them.

49. The Renditioned Class are Nevadans who were taken by LVMPD from Nevada to Arizona to effectuate searches, seizures and nonconsensual blood draws under Arizona law. The Plaintiff who is named here suffered from rendition by LVMPD to Arizona, and the claims or defenses of the representative parties are typical of the claims or defenses of the Renditioned Class.

50. Furthermore, even if any member of the Renditioned Class could afford individual litigation against LVMPD and BULLHEAD CITY, it could and would be unduly burdensome to the judicial system. The collective action is, therefore, the most efficient method by which to resolve these claims.

51. LVMPD is aware of the identities of the Renditioned Class, as Renditioned Class members would be detailed in incident reports created by LVMPD; further, BULLHEAD CITY would have documentation for all warrant requests and issuances performed at the request of LVMPD for Nevadans detained in Nevada but brought to Arizona for search and seizure; lastly, Maricopa County would have access to all warrants issued for search and seizure or nonconsensual blood draws for suspected crimes committed in Nevada.

52. Common questions of fact and law predominate the Renditioned Class as a whole. Those include:

    a. Whether Defendants knowingly and voluntarily conspired, planned and executed actions that violated Nevadans' civil rights and, in particular, the Plaintiff;

    b. Whether LVMPD had a policy, pattern and practice of renditioning Nevadans to Arizona;

    c. Whether BCPD or BULLHEAD CITY conspired with LVMPD to obtain warrants from Arizona courts to search and seize from Nevadans suspected of crimes within Nevada, which Nevadans had not purposefully availed themselves of Arizona jurisdiction;

    d. Whether Maricopa County had a policy, pattern and practice of issuing warrants at BCPD or BULLHEAD CITY request and affidavit, on behalf of LVMPD against citizens of Nevada suspected of crimes in Nevada;

Ryan Alexander, Chtd.
3017 West Charleston Boulevard Suite 10, Las Vegas, Nevada 89102

e.    Whether LVMPD officers knew or had reason to believe that renditioning Nevadans to Arizona was a violation of those Nevadans' civil rights;

f.    Whether BULLHEAD CITY or BCPD officers knew or had reason to believe that renditioning Nevadans to Arizona was a violation of those Nevadans' civil rights;

g.    Whether Plaintiffs and the Class have sustained damages caused by Defendants' violations of their civil rights and if so, what is the proper measure of their damages.

53.    Notice of the pendency and any resolution of these actions can be provided to Class Action members by email, mail, print, or internet publications.

## **FIRST CLAIM FOR RELIEF**

*(Violation of Civil Rights Pursuant to 42 U.S.C. §1983 Against All Defendants)*

54.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

55.    As a citizen of the United States, McMILLEN had a constitutional right to be protected from unreasonable search and search, deprivation of life, liberty and property – including bodily integrity – and to be free from unjustified pain and suffering, mental anguish and to live without threat to their personal safety while in the custody of Defendants LVMPD and BULLHEAD CITY, as protected by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

56.    Defendants, and each of them, acted under color of state law and violated Plaintiff's rights guaranteed by the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution.

57.    LVMPD, BCPD and BULLHEAD CITY, through their officials and agents SMITH and ESPINOZA, illegally renditioned and transported McMILLEN interstate twice; engaged in an illegal search and seizure from McMILLEN; used Arizona courts beyond the limits of their jurisdiction; illegally brought McMILLEN from her citizen state to Arizona for the purpose of finding a judge to order her blood to be taken; performed an illegal nonconsensual blood draw from McMILLEN; and then wrongfully prosecuted McMILLEN in Nevada with criminal charges using illegally obtained evidence, all in violation of her civil rights.

58.    LVMPD, BCPD and BULLHEAD CITY, through their officials and agents SMITH and ESPINOZA, intentionally performed illegal searches and seizures, including appropriate procedure for

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

issuance of legally valid nonconsensual blood draws;

59.    LVMPD, BCPD and BULLHEAD CITY, through their officials and agents SMITH and ESPINOZA, violated McMILLEN's civil rights, including McMILLEN's choice of state residency and right to be free from unreasonable search and seizure, and to be subject to the jurisdiction of her chosen home state, including Nevada law and its elected judiciary.

60.    Properly and appropriately transporting criminal suspects interstate, including appropriate legal procedure for extradition or involuntary interstate transportation.

61.    Defendants' actions exceeded the limits of LVMPD and BCPD legal jurisdiction.

62.    Defendants' actions exceeded the limits of jurisdiction of the courts of Mojave County and Maricopa County, Arizona.

63.    Despite it being mid-afternoon and within the jurisdiction of Clark County, Nevada, Defendants chose to rendition McMILLEN to Arizona instead of contacting the District Court in Clark County, Nevada.

64.    Defendants did not provide McMILLEN a phlebotomist within Nevada boundaries for Nevada citizens, under the jurisdiction of a Nevada judge.

65.    Defendants were deliberately indifferent to Plaintiff's constitutional rights and failed to act in an objectively reasonable manner.

66.    Defendants knowingly and voluntarily conspired, planned and executed actions that violated McMILLEN's civil rights under the United States Constitution and Nevada Constitution.

67.    LVMPD subjected McMILLEN to their policy, pattern and practice of renditioning Nevadans to Arizona.

68.    LVMPD conspired with BCPD or BULLHEAD CITY to obtain warrants from Arizona courts to search and seize McMILLEN's blood, when McMILLEN [as a Nevadan] had not purposefully availed herself of Arizona jurisdiction.

69.    BCPD or BULLHEAD CITY, on behalf of LVMPD, used Arizona courts against McMILLEN, a citizen of Nevada only suspected of crimes within Nevada.

70.    LVMPD, BULLHEAD CITY and BCPD officers knew or had reason to believe that renditioning Nevadan McMILLEN to Arizona was a violation of McMILLEN's civil rights.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

71.    As a result of the Defendants' Constitutional violations, and each of them, Plaintiff was wrongfully renditioned out of her citizen state, was subject to an illegal seizure of her blood, falsely imprisoned and subjected to criminal prosecution using illegally obtained evidence.

72.    Plaintiff was injured as a proximate result of the foregoing wrongful acts of Defendants.

73.    As a direct and proximate result of the breach of duty, McMILLEN was caused to suffer physical injury, pain and suffering, mental anguish and Plaintiff was deprived of rights guaranteed by the Fourteenth Amendment of the United States Constitution, for damages in excess of seventy-five thousand dollars ($75,000.00).

74.    Defendants are liable to Plaintiff for breach of their duty as described herein and their violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. §1983, in an amount in excess of seventy-five thousand dollars ($75,000.00).

75.    Plaintiff was forced to retain RYAN ALEXANDER, CHTD. to prosecute this action and is entitled to an award of reasonable attorney's fees and costs of suit incurred herein.

### SECOND CLAIM FOR RELIEF

*(Violation of Civil Rights – Monell Liability - 42 U.S.C. §1983 Against All Defendants)*

76.    Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

77.    Plaintiff further alleges, upon information and belief that it is the policy, practice and custom of LVMPD, BCPD and BULLHEAD CITY police to tolerate and ratify the unlawful rendition of Nevada citizens to Arizona and unlawful search and seizure by its officers. LVMPD, BCPD and BULLHEAD CITY officials were the moving force behind the constitutional violations perpetuated by the Defendant officers.

78.    The LVMPD Laughlin Manual explicitly and directly instructs LVMPD Officers to violate the constitutional rights of Nevada citizens by renditioning suspects from Nevada to Arizona, and to ask BULLHEAD CITY and BCPD to submit an affidavit to an Arizona judge for a nonconsensual blood draw warrant, and then to extradite those same suspects back to Nevada for detention - all without Nevada legal process.

79.    At all relevant times, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, maintained policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, employees, and agents with respect to the search and seizure from criminal suspects, limits of jurisdiction, blood draws and nonconsensual blood draws, warrants for blood draws, transporting criminal suspects interstate, extradition or transporting criminal defendants interstate, regarding Nevada citizens in their custody.

80.    LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, failed to adequately train, investigate, supervise, or discipline their officials, employees, and agents in, *inter alia*, the following areas:

a.    Appropriately performing search and seizure, including appropriate procedure for issuance of legally valid nonconsensual blood draws;

b.    Respecting the civil rights of Nevadans, including their choice of state residency and right to be free from unreasonable search and seizure and to be subject to the jurisdiction of their chosen home state;

c.    Properly and appropriately transporting criminal suspects interstate, including appropriate legal procedure for extradition or involuntary interstate transportation;

d.    Adequately training regarding the limits of LVMPD and BCPD legal jurisdiction;

e.    Adequately training regarding the limits of jurisdiction of courts including Clark County, Nevada, Mojave County and Maricopa County, Arizona;

f.    Providing a phlebotomist within Nevada boundaries for Nevada citizens.

81.    LVMPD, BCPD and BULLHEAD CITY's failure to adequately train, supervise, investigate, and discipline their officials, employees, and agents in the above-mentioned areas resulted in the Individual Defendants acting with unchecked authority and discretion and deliberate indifference to the rights of individuals within their custody and control, including McMILLEN.

82.    LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, were aware that their policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, employees, and agents would result in the constitutional violations and injuries stated herein.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

83.    Despite this, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, made conscious choices to maintain their policies and customs of failing to adequately train, investigate, supervise, and discipline their officials, agents, and employees in the above-mentioned areas for reasons peculiar to each Defendant, including, but not limited to, the pursuit of profit and political expediency. These choices were made with deliberate indifference to the constitutional rights of individuals within their custody and control.

84.    Thus, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, knew of and consciously disregarded a known and obvious consequence of their policies and customs, resulting in the constitutional violations and injuries stated herein.

85.    This inadequate training, investigation, supervision, and discipline was the direct and proximate cause of the constitutional violations and injuries suffered by McMILLEN, and LVMPD, BCPD and BULLHEAD CITY are liable to Plaintiffs for damages related to the same.

86.    Further, at all relevant times, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, maintained constitutionally inadequate policies, customs, and procedures with respect to search and seizure from criminal suspects, limits of jurisdiction, blood draws and nonconsensual blood draws, warrants for blood draws, transporting uncharged criminal suspects interstate, extradition or transporting criminal defendants interstate, regarding Nevada citizens in their custody, including:

a.    Instructing their officers illegal processes for search and seizure, including directing them to obtain illegal nonconsensual blood draw warrants;

b.    Instructing their officers to violate the civil rights of Nevadans, against their choice of state residency; to perform unreasonable search and seizure in foreign jurisdictions;

c.    Transport criminal suspects interstate [into and out of Nevada] without any legal process, legal representation or documentation; transporting citizens across state lines [into and out of Nevada] with no obedience to legal procedure for extradition or involuntary interstate transportation;

d.    Intentional ignorance of the limits of LVMPD and BCPD legal jurisdiction;

e.    Intentional ignorance of the limits of jurisdiction of courts including Clark County, Nevada, Mojave County and Maricopa County, Arizona;

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

f.   Use of illegal police force and threat of continued detention to threaten and punish Nevada citizens;

g.   Not providing a phlebotomist within Nevada boundaries for testing Nevada citizens.

87.   LVMPD, BCPD and BULLHEAD CITY's constitutionally inadequate policies, customs, and procedures caused the Individual Defendants to act with deliberate indifference to the rights of individuals within their custody and control, including McMILLEN.

88.   LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, were aware that their constitutionally inadequate policies, customs, and procedures would result in the constitutional violations and injuries stated herein.

89.   Despite this, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, made conscious choices to maintain their constitutionally inadequate policies and customs related to search and seizure from criminal suspects, limits of jurisdiction, blood draws and nonconsensual blood draws, warrants for blood draws, transporting criminal suspects interstate, extradition or transporting criminal defendants interstate, regarding Nevada citizens in their custody, for reasons peculiar to each Defendant, including, but not limited to, the pursuit of profit and political expediency. These choices were made with deliberate indifference to the constitutional rights of individuals within their custody and control.

90.   Thus, LVMPD, BCPD and BULLHEAD CITY, through their officials and agents, knew of and consciously disregarded a known and obvious consequence of their policies and customs, resulting in the constitutional violations and injuries stated herein.

91.   These constitutionally inadequate policies, customs, and procedures were the direct and proximate cause of the constitutional violations and injuries suffered by McMILLEN, and LVMPD, BCPD and BULLHEAD CITY are liable to Plaintiffs for damages related to the same.

92.   Defendants are liable to Plaintiff for breach of their duty as described herein and their violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. §1983, in an amount in excess of seventy-five thousand dollars ($75,000.00).

93.   Plaintiff was forced to retain RYAN ALEXANDER, CHTD. to prosecute this action and is entitled to an award of reasonable attorney's fees and costs of suit incurred herein.

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

**THIRD CLAIM FOR RELIEF**

*(Negligence)*

94.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

95.   At all times mentioned herein, Defendants, and each of them, were subject to a duty of care to avoid causing unnecessary harm and distress to citizens in the exercise of the police function.

96.   The conduct of Defendants as set forth herein did not comply with the standard of care to be exercised by reasonable police officers or the policies and procedures of the LVMPD or the BCPD.

97.   As a direct and proximate result of Defendants' negligence as herein alleged Plaintiff has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

*(Intentional Infliction of Emotional Distress)*

98.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

99.   The conduct of Defendant officers in detaining and renditioning the Plaintiff out of her domicile state against her will without probable case was extreme and outrageous and done with the intent to cause Plaintiff extreme emotional distress.

100.   The unlawful acts perpetuated by Defendants and each of them in intentionally inflicting emotional distress upon Plaintiff was the direct and proximate cause of Plaintiff suffering damages in an amount in excess of $75,000.00, the exact amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

*(False Imprisonment)*

101.   Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

102.   Defendants' acts in detaining and renditioning Plaintiff from Nevada her state of citizenship, to be detained in Arizona and then extradited back to Nevada without due process, directly and indirectly resulted in Plaintiff's freedom of movement to be confined.

103.   Plaintiff was aware and conscious of her confinement, and was harmed by said confinement.

104.   Defendants' conduct was the direct and proximate cause of damages to Plaintiff in excess of $75,000.00, the exact amount to be proven at trial.

…

## JURY DEMAND

Within Fed. R. Civ. P., Rule 59, the Seventh Amendment to the Constitution of the United States, as well as Article 1, Section 3 of the Constitution of the State of Nevada, or as otherwise may be provided, Plaintiffs hereby demand a jury trial for each of their claims.

…

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, each individually and on behalf of others similarly situated pray for the following relief:

A.   Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

B.   Compensation for both economic and non-economic losses in excess of $75,000, including but not limited to loss of earnings, pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

C.   Special Damages in an amount of be determined at trial;

D.   Punitive and/or exemplary damages in such amounts as may be proven at trial;

E.   Injunctive relief against all Defendants to effect change to Defendants' policies and procedures;

F.   Attorneys' fees and costs, including those under 42 U.S.C. § 1988;

G.   Pre- and post-judgment interest; and

H.   Any and all further relief, both legal and equitable, that the Court may deem just and proper.

Dated this 28th of February, 2024.                    RYAN ALEXANDER, CHTD.

RYAN ALEXANDER
Nevada Bar No. 10845
3017 West Charleston Blvd., Ste. 10
Las Vegas, NV 89102
*Attorney for Plaintiff*

RYAN ALEXANDER, CHTD.
3017 WEST CHARLESTON BOULEVARD SUITE 10, LAS VEGAS, NEVADA 89102

# EXHIBIT 1

# SEARCH WARRANT
## County of Maricopa, State of Arizona

**SEARCH WARRANT #    SW2022-097995**

**REPORT #    22-06487**

TO ANY PEACE OFFICER IN THE STATE OF ARIZONA

Proof by affidavit having been made this day before me by <u>Espinoza, Eddie #316</u>
of the Bullhead City Police Department, I am satisfied that there is probable cause to believe that in the
blood/body fluids of: <u>SHANNON C. MCMILLEN, Caucasian, Female, DOB: 05/21/1970</u>
located at 2735 SILVER CREEK ROAD BULLHEAD CITY, AZ. 86442, in the County of Mohave, State of
Arizona  or at any other location while in police custody in the County of Clark, State of Nevada, there is now
being possessed or concealed certain property or substance(s) described as intoxicating liquor, drugs, vapor
releasing substance or any combination, together with other fruits, instrumentalities and evidence of a crime
which property or things consists of any item or constitutes any evidence which tends to show a public offense
has been committed such being fully described in the affidavit, to wit:

[x] Driving or in actual physical control of a vehicle while under the influence of intoxicating liquor and/or
    drugs.

[ ] Aggravated driving or in actual physical control of a vehicle while under the influence of intoxicating
    liquor and/or drugs.

[ ] Aggravated Assault          [ ] Manslaughter    [ ] Homicide          [ ] Endangerment

[ ] Other Crime:

which I believe to have occurred on or about <u>3/9/2022 3:09 PM</u> hours, at East Laughlin Civic Drive X South
Casino Drive in the County of Clark, State of Nevada

**YOU ARE THEREFORE COMMANDED,**

in the daytime (excluding the time period between 10:00 p.m. and 6:30 a.m.)

to make a search of the above named or described person(s) for the herein above-described substances, and if
you find the same or any part thereof, to retain such in custody or in the custody of the Bullhead City Police
Department, as provided by  ARS § 13-3920.

Return this warrant to me within (3) three business days of the date thereof, as directed by  ARS § 13-3918.

Subscribed & submitted to me :  3/9/2022 6:40 PM

Honorable David Seyer
Maricopa County Superior Court

## SEARCH WARRANT
### County of Maricopa, State of Arizona

**WARRANT SERVED**: Date:_____ Time:_____
Receipt for property taken: _____

# EXHIBIT 2

INTERLOCAL AGREEMENT FOR MUTUAL AID
IN LAW ENFORCEMENT

THIS AGREEMENT is entered into on this ___1st___ day of __February__ 202_2_ , by and between the LAS VEGAS METROPOLITAN POLICE DEPARMENT (LVMPD) and the CITY OF BULLHEAD CITY, an Arizona municipal corporation (City).

W I T N E S S E T H:

WHEREAS, each of the parties hereto maintain law enforcement activities; and

WHEREAS, the parties hereto desire to obtain maximum efficiency in cooperative law enforcement through mutual aid and assistance by and among the parties, and

WHEREAS, the parties hereto are empowered to enter into an agreement for mutual aid under Nevada Revised Statutes *277.180* and *414.090* and the City is empowered to enter into this agreement under Arizona Revised Statutes 11-951 and 13-3872

NOW, THEREFORE, the parties agree as follows:

1.    Definitions.
    (1)    *Requesting Party* means any party requesting law enforcement assistance from any other party hereto.
    (2)    *Assisting Party* means any party rendering law enforcement assistance to a *Requesting Party*.
    (3)    *Chief Law Enforcement Officer* means that person, or his designees, who is a Department or Agency head with peace officer authority and the primary responsibility for law enforcement within the jurisdiction or territory of a party hereto.

2.    Mutual Aid.
    Each party hereto agrees to provide, upon request from another party hereto, aid and assistance in responding to emergency situations occurring within the jurisdiction of the *Requesting Party*. Such aid will consist of support through the direction by the assisting party of personnel, police and emergency equipment, and communication support to the *Requesting Party*.

3.    Procedure.
    All requests for assistance made by any party hereto shall be made by the *Chief Law Enforcement Officer* of the *Requesting Party*. Each request shall specify the location and identity of the person to whom *Assisting Party* personnel are to report. Each *Assisting Party* shall acknowledge and act upon such request only by order of its *Chief Law Enforcement Officer*.

1

4.    Extension of Authority.

The parties hereto agree that by requesting assistance from another party hereto, the *Requesting Party* consents to, and by such request confers upon those officers and employees of the *Assisting Party* who engage in mutual aid, the authority of peace officer within the *Requesting Party's* jurisdiction.    Such conferred authority shall exist only for such time the *Assisting Party's* officers and employees are engaged in rendering aid to the *Requesting Party*.

Nothing in this provision shall be construed as either limiting or extending the lawful jurisdiction of any party hereto other than expressly set forth herein.

5.    Scope of Aid.

The amount of assistance supplied by an *Assisting Party* may be limited by the ongoing needs of the *Assisting Party* to utilize its available personnel and equipment to adequately address law enforcement concerns within the *Assisting Party's* jurisdiction.

The determination of the amount, type, the extent of assistance to be extended upon any request shall lie solely within the discretion of the *Chief Law Enforcement Officer* of the *Assisting Party*.    The *Assisting Party* may order the return of any and all of its personnel or equipment to its own jurisdiction at any time.    The rendering of assistance under the terms of this plan is not mandatory, but the *Assisting Party* should immediately inform the *Requesting Party* if, for any reason, assistance cannot be rendered, or continued to be rendered.

6.    Control of Forces Required.

A *Requesting Party* shall exercise joint control in conjunction with any *Assisting Party* to assign personnel to places where they are needed; however, the commanding officer for any *Assisting Party* shall be responsible for exercising exclusive control over his forces in response to the jointly agreed to general directions of the *Requesting* and *Assisting Parties*.    Furthermore, parties of the *Assisting Party* engaging in mutual aid shall retain all the rights and protections afforded to employees of that party.

7.    Provision of Equipment.

In rendering mutual law enforcement assistance, each *Requesting Party* and *Assisting Party* shall be responsible for the provision and maintenance of its own equipment.

8.    Maintaining Radio Communication.

All parties having access to the Command Net Channel (8CALL) shall utilize same (in accordance with established guidelines) in order to obtain a Law Enforcement Mutual Aid (8TAC91-94) assignment to establish and maintain communication with each other.    Parties not having access to the Command Net

2

Channel (8CALL) shall communicate with one another and LVMPD via telephone through their respective communication center.

The applicable communication channels are set out below.

BHCPD:

| Channel Configuration | Function | Channel Name/Trunked Radio System Talkgroup | Assignment |
|---|---|---|---|
| REPT | Police Dispatch | PD1 | PATROL-Daily Operations |
| REPT | Police Tactical | PD2 | PATROL-Daily Operations |
| REPT | Police Tactical | PD3 | PATROL-Daily Operations |

LVMPD:
VHF        800 MHZ
ICALL---------8CAL90
ITAC1---------8TAC91
ITAC2---------8TAC92
ITAC3---------8TAC93
ITAC4---------8TAC94
Laughlin Resident Channel

9.    Reports.
    After an occurrence wherein mutual law enforcement assistance was requested and given, all parties participating in said occurrence of mutual aid shall make available to other participating parties all reports arising out of such operation; provided, however, that nothing in this provision shall purport to waive, limit or remove the duties of confidentiality imposed or allowed by law as to any such reports or the contents thereof.

10.    Responsibilities for Damages and Injuries.
    LVMPD shall be responsible for claims for damages or injuries arising from the acts or omissions of its officers, agents and employees in accordance with NRS Chapter 41. City of Bullhead City shall be responsible for claims for damages or injuries from the acts or omissions of its officers, agents and employees in accordance with Arizona governing law.

    To the extent required by Arizona Revised Statues §12-820 et seq., City is responsible for all claims, lawsuit proceedings, costs, damages and liabilities, including attorney fees, arising out of, connected with or resulting from the performance of any services by City under this Agreement, provided, that such claims, lawsuits, proceedings, costs, damages and liabilities are caused or contributed to by any negligent act or omission by the City or its employees, officers or agents. LVMPD is not agent of the City for purposes of this agreement.

3

Neither party waives any right or defense to indemnification that may exist in law or equity.

11.    Costs.
Except as provided in Sections 9 and 11 herein, each party hereto will bear its own costs in rendering mutual aid to another party hereto.

12.    Procedural Rules.
Appropriate officials of the parties hereto may promulgate such written operational procedure in implementation of this Agreement as is required.

13.    Duration.
This Agreement shall become effective upon signing by representatives of both parties. This Agreement shall remain in effect for a period of three (3) years. Any party hereto may terminate their participation in this Agreement effective upon sixty (60) days written notice to the other parties hereto.

14.    Return of Property.
Upon termination of this Agreement or withdrawal by a party, all property not owned by the terminating party which is in its custody or possession shall be forthwith returned to the party owning the same or to whom possession should be given, and all property of the terminating party which is in the custody or possession of another party hereto shall be immediately returned.

15.    Assignment, Modification.
The duties and responsibility of any party of this Agreement may not be assigned, in whole or in part, without prior written consent of the other party hereto.

This Agreement may be modified or amended only by written agreement, duly signed by the authorized representatives of the parties hereto.

18.    Notice.
Any notice to one party from the other under this Agreement shall be given in writing and sent via U.S. Mail, postage paid, and directed to the appropriate party as follows:

LVMPD:          Sheriff
                Las Vegas Metropolitan Police Department
                400 S. Martin L. King Blvd.
                Las Vegas, Nevada  89106
                Telephone:    (702) 828-3111

CITY:                    Chief of Police
                         City of Bullhead City
                         1255 Marina Boulevard
                         Bullhead City, Arizona 86442
                         Telephone: (928) 763-9200

19.    No Intent to Benefit Non-Parties.
Neither party to this Agreement intends to benefit any person who is not named as a party to this Agreement, to assume any specific duty of any person or to assume any other duty beyond that imposed by general law.

20.    Applicable Law.
This Agreement shall be interpreted under the laws of the State of Nevada, including but not limited to Nevada Revised Statutes Chapter 277.

21.    Counterparts
This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the dates set forth below:

LAS VEGAS METROPOLITAN               CITY OF BULLHEAD CITY
POLICE DEPARTMENT


By: _____           By: _____
       Joseph Lombardo                       Tom Brady
       Sheriff                               Mayor

APPROVED AS TO FORM:                 ATTEST:


By: _____           By: _____
       Liesl Freedman                        Susan Stein
       General Counsel                        City Clerk

                                     APPROVED AS TO FORM:


                                     By: _____
                                            Garnet K. Emery
                                            City Attorney

5

RESOLUTION NO. 2022R- 0 5

**A RESOLUTION OF THE MAYOR AND CITY COUNCIL OF THE CITY OF BULLHEAD CITY, ARIZONA APPROVING AN INTERLOCAL CONTRACT FOR MUTUAL AID IN LAW ENFORCEMENT BETWEEN THE LAS VEGAS METROPOLITAN POLICE DEPARTMENT AND THE CITY OF BULLHEAD CITY AND AUTHORIZING THE MAYOR TO EXECUTE THE AGREEMENT ON BEHALF OF THE CITY.**

WHEREAS, The Bullhead City Police Department and Las Vegas Metropolitan Police Department are each responsible for law enforcement activities within their respective jurisdictions; and

WHEREAS, The City desires to enter into an Interlocal Agreement with the Las Vegas Metropolitan Police Department to obtain maximum efficiency through cooperation in law enforcement investigations and mutual assistance; and

WHEREAS, the City of Bullhead City is empowered to enter into this contract by virtue of the provisions of A.R.S. Section 11-952, et seq., and the Las Vegas Metropolitan Police Department is empowered to enter into this agreement by virtue of the provisions of Chapter 277 of the Nevada Revised Statutes.

NOW, THEREFORE, BE IT RESOLVED THAT, the Mayor and members of the Bullhead City Council hereby approve the attached "Interlocal Agreement for Mutual Aid in law Enforcement" between the City of Bullhead City and the Las Vegas Metropolitan Police Department and hereby authorize the Mayor to execute the contract on behalf of the City.

PASSED AND ADOPTED by the Mayor and City Council of the City of Bullhead City this 1st day of February, 2022.

_____
Tom Brady, Mayor

ATTEST:

_____
Susan Stein, City Clerk          (SEAL)

APPROVED AS TO FORM:

_____
Garnet K. Emery, City Attorney

# EXHIBIT 3

## Amanda Senif

| | |
|---|---|
| **From:** | Charles Smith <c13800s@LVMPD.COM> |
| **Sent:** | Wednesday, January 4, 2023 2:31 PM |
| **To:** | Amanda Senif |
| **Subject:** | DMV SHANNON MCMILLEN CASE 220300036541 |

**WARNING** - This email originated from outside the State of Nevada. Exercise caution when opening attachments or clicking links, especially from unknown senders.

LAUGHLIN MANUAL REF DUI I UDED SUB 4 TO TRANSPORT MRS. MILLIER TO ARIZONA FOR BLOOD DRAW.

LAUGHLIN MANUAL DUI SECTION
5/205.12 – EVIDENTIARY TESTING OF IMPAIRED DRIVERS (DUI) 5/200.01 – SEARCH AND SEIZURE (SECTION 3 & SECTION 6) 5/107.10 – TRAFFIC ENFORCEMENT

DUI arrests in Laughlin/Searchlight areas will be handled the same as they would in the Las Vegas Valley. Evidentiary Breath Tests are the preferred method of evidence collection for DUI arrests. In the event a voluntary evidentiary breath test cannot be completed, a voluntary evidentiary blood draw can be completed. The arrestee will be transported to WARMC in Bullhead City and a licensed phlebotomist will complete the blood draw. An LVMPD blood kit and a Nurse's Affidavit form will be provided to the nurse prior to the blood being drawn. The completed blood kit will then be sealed and placed into the evidence refrigerator located at Tucker Holding Facility. Officers will then sign the evidence log for chain of custody on the blood kit.
A. Blood draws for DUI cannot be done at Tucker Holding Facility.

B. In cases of DUI with accident and the suspected DUI driver is transported to Western Arizona Regional Medical Center (WARMC), officers can contact Bullhead City Police Department Dispatch and ask for the on-duty supervisor to send an officer to meet the Resident Officer at the Hospital. The Resident Officer will complete the Arizona Non-Consensual Evidentiary Blood Draw Search Warrant Probable Cause Statement and provide a blood draw kit to the nurse at WARMC. The Bullhead City Police Department officer will then complete a telephonic search warrant for the removal of blood from the suspect in Arizona. Once the telephonic search warrant is completed, the blood will be drawn and impounded following standard LVMPD Departmental procedures and the nurse will fill out the blood draw form labelled for Arizona blood draws. All follow-up paperwork will be completed by Investigative Specialist, Deborah Bryant.

C. Officer completes the necessary reports, issues the DUI driver a misdemeanor citation for DUI w/accident, and impounds the blood evidence at the Tucker Holding Facility.

D. The Resident Officer will request assistance from Bullhead City Police Department who will do a warrant. The blood draw process is the same as listed above in Section B.

1

PETITIONER'S
EXHIBIT # __4__